## James Kirk

### v.

## Frederick Vonberg.

1. JUDGMENT — *lien on real estate.* Under the statute, a judgment of the Circuit Court is a lien on real estate of the debtor, coëxtensive with the county in which the judgment is rendered, after the adjournment of the court, for seven years, in case execution is issued within a year after its rendition. And when the legislature created the Municipal Court of Chicago, and declared that its judgments should have the same lien on real and personal estate as judgments of the Circuit Courts of the State, the lien was made the same within its jurisdiction.

2. MUNICIPAL COURT — *its jurisdiction.* When the legislature, by the act of the 4th of March, 1837, authorized the citizens of Cook county to have recourse to this court, and declared that its jurisdiction should be concurrent with that of the Cir-

Kirk *v.* Vonberg.

cuit Court within the county, having declared its judgments a lien, they attached as such on all of the real estate of the defendants, situate within the county.

3. JUDGMENT LIEN — *priority — effect of a prior sale of real estate under a junior judgment.* A judgment was recovered at the July term, 1837, of the Municipal Court of Chicago, and at the August term of the same year, of the Circuit Court of Cook county, another judgment was rendered against the same defendant. The term of the Municipal Court was adjourned before that of the Circuit Court, therefore, the judgment rendered at the July term in the former court, was a prior lien upon the real estate of the defendant in Cook county; and a prior sale under an execution issued upon the junior judgment, would not at all affect the rights of a subsequent purchaser under the judgment to which was given the priority of lien.

WRIT OF ERROR to the Superior Court of Chicago.

This was an action of ejectment commenced in the Superior Court of Chicago, at the April term, 1864, by James Kirk against Frederick Vonberg, to recover the W. ½ S. W. sec. 28, T. 36 N., R. 13 E. in Cook county. The cause was tried by the court below without the intervention of a jury on this agreed state of facts:

"It was agreed that William B. Egan became the owner in fee of the premises, by purchase from the United States government, in February, 1836."

"Both parties derive title under judgments against said Egan, and execution sales under said judgments; and it was agreed that the parties each held or claimed title under proper mesne conveyances subsequent to the several execution sales, and that Vonberg was in possession of the premises at the commencement of this action."

"It was further agreed, that at the August term, 1837, of the Circuit Court of Cook county, Illinois, Buckner S. Morris recovered a judgment against said William B. Egan, for $677.80 and costs of suit, and that an execution issued on said judgment, directed to the sheriff of Cook county aforesaid, which was levied on the premises in question; and after being duly advertised, on the 27th day of December, 1837, the said premises were, by the sheriff, duly sold to Buckner S. Morris, the plaintiff in execution, who afterwards received a sheriff's deed of them; and the plaintiff, James Kirk, claims title under this sale to Morris."

"It was further agreed that, at the July term, 1837, of the Municipal Court of the city of Chicago, in said Cook county, Erastus Bowen recovered a judgment against said William B. Egan, for $364.15¼, and that an execution was issued on said judgment, directed to the sheriff of said county, dated July 31st, 1837, which was afterwards returned by said sheriff, 'no property found on which to levy;' and that afterwards an alias execution was issued from said court, dated January 10th, 1839, directed to the sheriff of said county, and which was duly levied on said lands on the 16th day of January, 1839; and that on the 15th day of March, 1839, the said sheriff duly sold said premises, under and by virtue of said execution, to said Bowen, who, in due time, received a sheriff's deed of the same; and that under this levy and sale defendant, Vonberg, claims title to the lands in controversy."

"It was also agreed that the July term, 1837, of the Municipal Court of Chicago, adjourned before the August term, 1837, of the Circuit Court of Cook county was ended."

"Upon the foregoing facts the court found the issues for the said defendant, and rendered judgment in his favor; to which decision and finding of the court, the said plaintiff then and there excepted; and the parties, plaintiff and defendant, do hereby agree that the foregoing agreed case may be filed with the clerk of said Superior Court, and by him certified to the Supreme Court of this State, at the April term, 1864, in and for the third grand division, as is by law provided."

Plaintiff insists that the court erred in finding the issues for defendant, and in not rendering judgment for plaintiff.

Messrs. SCAMMON, McCAGG and FULLER, for the plaintiff in error:

1. The Municipal Court of Chicago was established by an act of the legislature, approved March 4th, 1837. Sess. Laws 1837, p. 75, sec. 69.

This section conferred jurisdiction "in all matters arising within the limits of the city."

The judge was required, by section 70, to reside within the city, and his salary was paid by the city. The jurors were to be selected from the qualified inhabitants of the city, summoned by the high constable, and paid by the city. The high constable or executive officer of the court was to be "chosen by the qualified electors of the city," and he was authorized to execute all process within the city, as the sheriffs did throughout the county; but if the defendant or defendants, or any of them, lived out of the city and in Cook county, the process was to be directed to the sheriff for service and return.

The 80th section is the one on which the question arises, and provides that the judgments of that court shall have the same lien on real and personal estate, and shall be enforced and collected in the same manner as judgments rendered in the circuit courts of the State."

The liens of the judgments of the circuit courts are coëxtensive with the county in which the court is held. *Bustard ot al.* v. *Morrison et al.* 1 Scam. 235.

2. The case of *Beaubien* v. *Brinckerhoff*, 2 Scam. 269, relied on by the defendant, does not touch the point in this case.

The question there was one of pleading — of what averments were necessary to be made in a declaration filed in that court, in order to support the jurisdiction of the court upon error brought to reverse its judgment, for want of certain allegations.

The same question was made in that case, that so long troubled this court in regard to the circuit courts, until it was set at rest, by the decision made in *Kenney et al.* v. *Greer*, 13 Ill. 432. We think the views we have presented are sanctioned by what this court said in case of *Durham et al.* v. *Heaton*, 28 id. 264, and that the court there recognized the rooted principle in our law, that the lien of judgments is confined to the limits of the territory for which they are established, and is not coëxtensive with the reach of their process.

If this principle is recognized and applied in this case, then the judgment under which the plaintiff claims title was an

older lien, than that acquired by the levy of the execution issued on the Bowen judgment two years afterwards, and the finding and judgment of the court below on the agreed case should be reversed.

We are not aware of any contemporaneous construction of this statute one way or another as suggested by the counsel for the defendant. The question has not before been made, certainly it has not been decided.

Messrs. GOODRICH, FARWELL and SMITH, for the defendant in error:

The only question presented for the consideration and decision of the court is, whether judgments recovered in the Municipal Court of Chicago became and were a lien upon the lands of the defendant within the county of Cook, from the last day of the term of the court at which they were rendered.

That judgments rendered in the Circuit Court created such lien, and that a sale of premises on which such lien has attached, on execution on a junior judgment, does not divest the prior judgment creditor of the right to have his judgment satisfied out of the same lands, I apprehend will not be questioned. It was so declared in the case of *Rogers* v. *Dickey*, 1 Gilm. 644.

This being conceded, we assume that the same lien and effect was given by the judgments rendered in the Municipal Court as to those rendered in the Circuit Court, and to sustain such assumption we appeal first, to the language of the law creating said court, and amendatory thereof.

The Municipal Court of Chicago was created, and its jurisdiction conferred by an act entitled "An act to incorporate the city of Chicago," and by a supplemental act, passed at the session of the legislature in 1837. See acts of 1837, pp. 75, 76, 77, and 81. The 69th section of said act declares, "there shall be established in said city of Chicago, a Municipal Court, which shall have jurisdiction concurrent with the Circuit Courts of this State, in all matters civil or criminal, arising within the limits of said city, and in all cases where either plaintiff

and defendant, or defendants, shall reside at the time of commencing suit, within said city." By a supplemental act, approved March 4, 1837, it was further declared "that all persons residing in said county of Cook, may, at their option, have recourse to the Municipal Court of said city, and the said Municipal Court shall have concurrent jurisdiction with the Circuit Court in all matters arising within said county."

Its jurisdiction was not, therefore, confined to said city, but, in the cases enumerated, was as full and complete within the county of Cook, as was that of the Circuit Court. In the case of *Bustard et al.* v. *Morrison et al.*, 1 Scam. 235, this court held that "The statute makes judgments of the Circuit Court a lien upon all the lands of the defendant within its own jurisdiction;" that "no sale or transfer of those lands after judgment, will exempt them from the operation of an execution at any time within seven years since the act of 1825." The court further say, "The judgment of a Circuit Court creates no lien upon land beyond the limits of its jurisdiction, to wit: the county in which said judgment is rendered." Therefore, it follows that inasmuch as a judgment in the Circuit Court of Cook county was a lien on all the lands of the defendant in said county, and the jurisdiction of the Municipal Court was concurrent with the Circuit Court in said county, its judgments were a lien on the lands of the defendant or defendants situated in the county of Cook.

And we apprehend, if any doubts could have originally been entertained, the case of *Beaubien* v. *Brinkerhoff*, 2 Scam. 272, has dissipated them. It was held in that case that the Municipal Court of the city of Chicago was a Superior Court, and that nothing shall be held to be out of the jurisdiction of a Superior Court, but that which specially appears to be so. It was further distinctly held in that case, that "the act creating the Municipal Court of the city of Chicago, and the act supplemental thereto, conferred on the Municipal Court concurrent jurisdiction with the Circuit Court in all matters arising within the county of Cook." The court further say, "as it does not appear from the declaration but that some one of the facts

existed, which would give the Municipal Court jurisdiction, this court, upon the rule above laid down, is bound to intend that the Municipal Court had jurisdiction both of the person and the subject matter of the action." Much more will it be so held in this case, than on a direct proceeding to reverse the judgment, as was the case above cited. ·

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

The question presented by this record, is whether the judgment in favor of Brown became a lien upon Egan's.real estate beyond the limits of the city of Chicago, but within the county of Cook. It was recovered at the July term, 1837, and the judgment in favor of Morris was rendered at the following August term. If the land out of the city, was subject to the lien of Brown's judgment the prior sale under Morris' judgment, could·not affect that lien, as in that case, Morris' sale would be subject to the prior lien, and the sale could only confer the rights of a junior judgment creditor to the purchaser.

Was Brown's judgment a lien on Egan's real estate beyond the limits of the city? The ninth section of the act creating the Municipal Court, Sess. Laws, 1837, p. 75, declares, that it shall have jurisdiction concurrent with the Circuit Courts of the State, in all matters civil and criminal arising within the limits of the city. The 78th section provides, that when the defendants, or either of them shall reside beyond the city limits, and in the county, the process shall be directed to the sheriff of the county who is required to execute the same. Again the 80th section provides, that all judgments rendered by the court, shall have the same lien on real and personal estate, and shall be enforced and collected in the same manner as judgments rendered in the circuit courts of this State. These seem to be the only material provisions of this act, necessary to consider in determining this question. But by a supplemental act of the 4th of March, 1837, (Sess. Laws 81,) it is declared, that persons residing in Cook county may have recourse to that court, and that it shall

have jurisdiction concurrent with the Circuit Court in all matters arising within the county.

The act has provided for the enforcement and collection of the judgments of the court it had created, in the same manner as judgments of the Circuit Courts of the State. The mode of enforcing such judgments is by lien, by levy, and by sale of property. And the supplemental act declares, that the court shall have concurrent jurisdiction with the Circuit Court in all matters arising within the county. Then is a lien a part of the jurisdiction of a court of superior jurisdiction? Jurisdiction has been defined to be a power constitutionally conferred upon a judge or magistrate to take cognizance of, and decide causes according to law, and to carry his sentence into effect. 1 Bouv. Law Dic. 638. The various enactments of this State, have created a lien upon real estate in the county in which the Circuit Court is held, upon all real estate of the debtor, by the rendition of the judgment, from the last day of the term. This lien appertains to and is a part of the means of enforcing the sentence of the court, and hence is a part of the jurisdiction of the Circuit Court. It is a part of the power of enforcing the sentence pronounced according to law. And when the 80th section of the act declares that the Municipal Court shall have the same lien on real and personal estate as the Circuit Courts of the State, it only defined its jurisdiction with more precision than it had in conferring generally the jurisdiction exercised by the Circuit Courts of the State.

To ascertain the scope of the lien created in the eightieth section, we only have to ascertain the extent of the lien on real estate created by judgments in the Circuit Courts of the State. This court has held that judgments of the Circuit Courts, by the statute, are liens upon all lands of the defendant within their jurisdiction. *Bustard* v. *Morrison,* 1 Scam. 235. And in that case it was also held that the jurisdiction of the Circuit Court is limited to the county in which the judgment is rendered, and no lien attaches beyond its limits. The jurisdiction of the Circuit Court being coëxtensive with Cook county, and the Municipal Court having concurrent jurisdiction, and the lien created

by its judgments being the same, the lien of the judgment recovered by Brown in the Municipal Court became a lien on all of Egan's property in the limits of the county. If this were not so, it would not be the same, but a different lien from that of the Circuit Courts of the State.

This judgment then becoming a lien on the defendant's property, coëxtensive with the lien of Morris' judgment in the Circuit Court, and the former being a first lien, and execution having been issued within a year from the last day of the term, and a sale being made within seven years, the sale was sufficient to, and did pass the title. The sale under Morris' judgment, although prior in point of time, was under a junior lien, and did not affect the rights of the purchaser under Brown's judgment. It did not affect his right to have his judgment ratified by a sale of the same lands sold under Morris' junior judgment. *Rogers* v. *Dickey*, 1 Gilm. 636. There appears to be no error in this record, and the judgment of the court below is affirmed.

*Judgment affirmed.*